**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TIANA WATTS, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>LEWIS BROTHERS BAKERIES, INC.,<br>Defendant. | Case No. ____________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tiana Watts ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendant Lewis Brothers Bakeries, Inc. ("Defendant" or "Lewis Brothers") and alleges the following upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including the investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This putative class action challenges Defendant's marketing, labeling, and sale of five Lewis Bake Shop Better Way breads whose packaging bore bearing the unqualified representation "0g SUGAR" on their principal display panels under the "Healthy Life" and "Better Way" name: (a) Better Way 5 Seed Keto Bread (16 oz.); (b) Better Way Protein Bread (17.5 oz.); (c) Better Way Hawaiian Keto Bread (16 oz.)[1]; (d) Better Way White Keto Bread (16 oz.); and (e) Better Way Avocado & Seeds Keto Bread (16 oz.) (collectively, the "Products")[2]. Plaintiff brings this action individually and on behalf of a proposed nationwide

---

[1] Formerly known as *Healthy Way Hawaiian Keto Bread (16 oz.),* as demonstrated in the images below.

[2] The Products are substantially similar because each bears the same "0g SUGAR" representation and each contains allulose. Plaintiff reserves the right to amend the definition of "Products" as further investigation and discovery may reveal.

class and a proposed class of New York consumers who purchased one or more Products for personal, family, or household use.

2. Defendant placed the unqualified representation "0g Sugar" (the Challenged "Representation") on the front of each Product's principal display panel. Plaintiff saw the representation before purchasing a Product and understood it to mean that the Product contained no sugar. Sugar content is material to consumers choosing keto or low-sugar foods, and the uniform representation was likely to affect their purchasing decisions.

3. Each Product's ingredient statement identifies "ALLULOSE" as an ingredient. Allulose is a sugar. Its presence in every Product renders the "0g Sugar" representation false and misleading.

4. Allulose is a monosaccharide sweetener. The federal regulation defines "Total Sugars" as the sum of all free mono- and disaccharides, and the Seventh Circuit recently held that the pleading stage, that allulose falls within that definition. 21 C.F.R. § 101.9(c)(6)(ii); *Franco v. Chobani, LLC*, 184 F.4th 599, 603-604 (7th Cir. 2026). The FDA has announced enforcement discretion for excluding allulose from the "Total Sugars" and "Added Sugars" declarations on Nutrition Facts labels, while requiring it to remain included in "Total Carbohydrate." That guidance concerns Nutrition Facts declarations; it does not resolve whether the separate front-panel "0g SUGAR" representation is misleading under New York law.

5. Listing allulose in the ingredient statement does not cure the prominent "0g SUGAR" representation. Plaintiff alleges that a reasonable consumer could understand the front-panel statement to mean that the Product contains no sugar, without independently researching allulose's chemical classification or the FDA's Nutrition Facts policy.

6. Defendant controlled the Products' formulations and labeling and knew that the Products contained allulose and bore the Challenged Representation. Defendant nevertheless placed the unqualified representation on each Product's principal display panel.

7. The Challenged Representation affected Plaintiff purchasing decision. Had Defendant omitted or clearly qualified that representation, Plaintiff would not have purchased the Product or would have paid less for it. Plaintiff and similarly situated purchasers suffered economic injury by paying a price premium for Products worth less than represented.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members.

9. Plaintiff is a citizen of New York. As alleged below, Defendant is a citizen of Missouri and Indiana. Because Plaintiff is a member of the proposed Class, at least one Class member is a citizen of a State different from Defendant. Minimal diversity therefore exists under 28 U.S.C. § 1332(d).

10. This Court may exercise specific personal jurisdiction over Defendant because Defendant purposefully marketed, distributed, and sold, or caused the sale of, the Products to New York consumers, including through retail channels in Brooklyn. Plaintiff's claims arise out of or relate to those New York contacts because she purchased a challenged Product in Brooklyn after seeing the challenged "0g sugar" the Challenged Representation.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Brooklyn, Kings County, New

York, including Plaintiff's encounter with the challenged representation and purchase of a challenged Product. Plaintiff alleges that she suffered the resulting economic injury there.

## THE PARTIES

***Plaintiff Tiana Watts's experience***

12. Plaintiff Tiana Watts is an individual and resident of Brooklyn, Kings County, New York, and is a citizen of the State of New York. On or about March 3, 2024, Plaintiff purchased a 16-ounce Lewis Bake Shop Healthy Life Hawaiian Keto Bread from a Target store located in Brooklyn, New York, for personal, family, or household use and not for resale.

13. Before her purchase, Plaintiff saw the unqualified "0g Sugar" representation on the Product's principal display panel and understood it to mean that the Product contained no sugar. The representation was material to her purchasing decision. Had Plaintiff known that the Product contained allulose, a sugar, she would not have purchased it or would have paid less. Plaintiff alleges that she suffered economic injury because she paid more than the Product was worth as labeled and sold.

***Defendant Lewis Brothers Bakeries, Inc.***

14. Defendant Lewis Brothers Bakeries, Inc., is a Missouri corporation with its principal place of business at 1220 West Michigan Street, Evansville, IN 47710.

15. Defendant markets, distributes, and sells the Products nationwide through retail and e-commerce channels, including through its website and retailers such as Target, Walmart, and other grocery stores. The Products are also offered through online retailer platforms.

16. On information and belief, Defendant formulated or approved the Products' formulations and labels and controlled or participated in their marketing and distribution, including the use of the unqualified "0g SUGAR" representation on each Product's principal display panel.

## FACTUAL BACKGROUND

### Consumers Seek Out and Pay More for Products That Contain No Sugars

17. Whether a product contains sugar is a decisive purchasing factor for a large share of American consumers. In the International Food Information Council's 2025 Food & Health Survey, three in four Americans reported that they were trying to limit or avoid sugar in their diets and more than six in ten said they were concerned about the amount of sugar they consume.[3]The federal government's own nutrition policy reflects this concern: the 2025–2030 Dietary Guidelines for Americans state that "no amount of added sugars . . . is recommended or considered part of a healthy or nutritious diet."[4]

18. For decades, federal health authorities have recommended limiting added sugar intake.[5] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Globally, 83% of consumers report that they are limiting or avoiding sugar in their diets.[6]

19. Food manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "0g Sugar" and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a

---

[3] Int'l Food Info. Council, 2025 Food & Health Survey 67, 75 (Jan. 13, 2026), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (last accessed November 9, 2026).

[4] U.S. Dep't of Health & Human Servs. & U.S. Dep't of Agric., Dietary Guidelines for Americans, 2025–2030 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf (last accessed November 9, 2026).

[5] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .US. Dept of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[6] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

purchase.

20. Defendant has capitalized on that demand. It markets Products that contain allulose, a sugar, while labeling and advertising them as “0g Sugar.” Defendant thereby obtained an unfair competitive advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**Defendant’s False and Misleading “0g sugar” Representations**

21. Defendant labels and markets each of the Products with the Challenged Representation, “0g SUGAR”.

22. The Challenged Representation appears prominently on the Products’ principal display panels and is presented in a manner designed to communicate the Products’ sugar content before consumers review the ingredient lists or other information on the packaging.

23. Representative images of the front labels, Nutrition Facts, and ingredient lists for the Better Way 5 Seed Keto Bread, Better Way Protein Bread, and Better Way Hawaiian Keto Bread appear below as examples[7]:

[7] The images below are representative of the Products’ labeling. Each Product bore the same “0g Sugar” representation on its principal display panel and lists in its ingredient statement without an asterisk or qualifying statement.






**Nutrition Facts**

16 servings per container

**Serving size** **1 Slice (28g)**

**Amount per serving**

**Calories** **40**

| | % Daily Value* |
|---|---|
| **Total Fat** 1.5g | 2% |
| Saturated Fat 0g | 0% |
| *Trans* Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 120mg | 5% |
| **Total Carbohydrate** 9g | 3% |
| Dietary Fiber 8g | 29% |
| Total Sugars 0g | |
| Includes 0g Added Sugars | 0% |
| **Protein** 5g | |



**INGREDIENTS:** WATER, RESISTANT WHEAT STARCH, WHEAT PROTEIN, SEED MIX (MILLET, FLAX, SUNFLOWER, CHIA, QUINOA), YEAST, ALLULOSE, CONTAINS LESS THAN 2% OF AVOCADO OIL, SALT, CHICORY ROOT FIBER, CALCIUM PROPIONATE AND SORBIC ACID (TO RETAIN FRESHNESS), STEVIA LEAF EXTRACT (REB M), VEGETABLE MONOGLYCERIDES, FUMARIC ACID, GUAR GUM.

**CONTAINS WHEAT.** 576-16-072425

*Better Way 5 Seed Keto Bread (16 oz.)*







*Better Way Protein Bread (17.5 oz.)*







*Better Way Hawaiian Keto Bread (16 oz.)*





NUTRITION FACTS

**Nutrition Facts**

16 servings per container

| | |
|---|---|
| **Serving Size** | **1 Slice (28g)** |
| **Amount per serving** | |
| **Calories** | **35** |
| | **% Daily Value*** |
| **Total Fat** 1g | **1%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 130mg | **6%** |
| **Total Carbohydrate** 9g | **3%** |
| Dietary Fiber 8g | **29%** |
| Total Sugars 0g | |
| Includes 0g Added Sugars | **0%** |
| **Protein** 5g | |
| Vitamin D 0mcg | 0% |
| Calcium 29mg | 2% |
| Iron 0.4mg | 2% |
| Potassium 16mg | 0% |

*The % Daily Value tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

Calories per gram:
Fat 9 • Carbohydrates 4 • Protein 4

INGREDIENTS

**INGREDIENTS:**

WATER, RESISTANT WHEAT STARCH, WHEAT PROTEIN, YEAST, ALLULOSE, CANOLA OIL, CONTAINS 2% OR LESS OF THE FOLLOWING: STEVIA LEAF EXTRACT (REB M), CHICORY ROOT FIBER, SALT, CALCIUM PROPIONATE (TO RETAIN FRESHNESS), DOUGH CONDITIONERS (MONO- AND DIGLYCERIDES, ASCORBIC ACID), FUMARIC ACID, SORBIC ACID (TO RETAIN FRESHNESS), GUAR GUM, GROUND TUMERIC.

**CONTAINS:**

WHEAT.

**ALLERGEN ADVISORY:**

PRODUCED ON THE SAME BAKERY EQUIPMENT AS BAKED GOODS CONTAINING MILK, EGGS OR TREE NUTS. THEREFORE, THIS PRODUCT MAY INADVERTENTLY CONTAIN MILK, EGGS OR TREE NUTS TO WHICH SOME PEOPLE MAY BE ALLERGIC.

Lewis Bakeries, Inc.
General Offices: Evansville, IN 47710

* While we make every effort to post the most current product nutrition facts and ingredients on this website, your best source of product information is what is printed on the package you purchase.

*Healthy Life Hawaiian Keto Bread (16 oz.)*[8]

24. Defendant repeated the Challenged Representation on its own website, advertising the Healthy Life Hawaiian Keto Bread as "0g Sugar Per Slice" while stating, in the same product description, that each slice contains "1g Allulose."[9]

25. Sugar content is material to consumers selecting bread marketed as keto or low carbohydrate. Plaintiff saw the Challenged Representation before purchasing the Product and understood it to mean that the Product contained no sugar. The representation was material to her purchasing decision.

---

[8] The Hawaiian Keto bread has been sold under both the "Healthy Life" and "Better Way" names. Both versions are the same product, and each bore the "0g Sugar" representation on the front label, disclosed "1g Allulose" per slice on the back label, and listed allulose in the ingredient statement without an asterisk or qualifying statement. *See* Lewis Bake Shop, *Better Way Hawaiian Keto Bread (16 oz.)*, https://www.facebook.com/LewisBakeShop/videos/say-aloha-to-your-new-favorite-bread-try-our-lewis-bake-shop-hawaiian-keto-bread/1405222267473111/ (July 15, 2025); and *Healthy Life Hawaiian Keto Bread (16 oz)* https://www.amazon.com/dp/B0C2RFVH8G?plpRedirect=mhFallback&ref=clp_hp_h_pc (last accessed on November 12, 2026).

[9] *See* Lewis Bake Shop, *Healthy Life Hawaiian Keto Bread (16 oz.)* (archived Sept.13, 2024), https://web.archive.org/web/20240913042613/https://lewisbakeshop.com/product/healthy-life-hawaiian-keto-bread/

26. Each Product's ingredient statement identifies "Allulose". On the Better Way Protein Bread and Better Way 5 Seed Keto Bread, it is the sixth-listed ingredient. In the Hawaiian Keto bread, it is the fifth-listed ingredient in the "Healthy Life" packaging and the sixth-listed ingredient in the "Better Way" packaging. In none of the Products is "allulose" followed by an asterisk or by any statement that it "adds a trivial amount of sugar," "adds negligible amount of sugar," or "adds a dietarily insignificant amount of sugar."

**Allulose Is Sugar**

27. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). The definition turns on chemical structure — "the number of saccharide units" — not on physiological effects such as caloric value or glycemic response. See 58 Fed. Reg. 2,079, 2,098 (Jan. 6, 1993). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[10] FDA has not completed such rulemaking.

28. *In Franco v. Chobani, LLC*, the Seventh Circuit recently confirmed that allulose is a sugar under federal labeling regulations. 184 F.4th 599. The court explained that 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as the sum of all free mono- and disaccharides and, because allulose is undisputedly a monosaccharide, it falls squarely within that definition. Accordingly, under the governing federal regulations, allulose is a sugar.

29. The industry also recognizes that allulose is a sugar. Indeed, a leading

[10] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016).

manufacturer of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[11] and has noted in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar."[12] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[13]

30. Allulose is not merely classified as a sugar; it is used as one. Allulose has approximately seventy percent of the sweetness of sucrose and is used as a bulk sweetener and substitute for conventional sugar.[14] Its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity.[15]

31. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

32. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's separate front-label "0 Sugar" representation expressly characterizes the level of sugar in the Products and is a nutrient-content claim

---

[11] Tate & Lyle Ingredients Americas LLC, *A Clinical Study on the Effect of Allulose, a Low-Calorie Sugar, on in vivo Dental Plaque pH* (Aug. 13, 2018), https://www.regulations.gov/document/FDA-2015-P-1201-0014.

[12] Citizen Petition from Tate & Lyle Ingredients Americas LLC to the U.S. Food & Drug Administration, *Citizen Petition Requesting that Allulose Be Exempt from Being Included as a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages* (Apr. 10, 2015), FDA Docket No. FDA-2015-P-1201, https://www.regulations.gov/docket/FDA-2015-P-1201.

[13] *See*, e.g., *Cleveland Clinic, What You Need to Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose.

[14] Mengting Tao, Wenli Zhang & Wanmeng Mu, *D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025), https://doi.org/10.1021/acs.jafc.5c13620; Han-Joo Maeng et al., *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 Foods art. 448, at 1–2 (2019), https://doi.org/10.3390/foods8100448.

[15] Mengting Tao, Wenli Zhang & Wanmeng Mu, *D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025), https://doi.org/10.1021/acs.jafc.5c13620.

governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

33. The "0 Sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

34. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

35. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "zero sugar" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> (i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a

trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

36. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

37. The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. The allulose in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

38. The Hawaiian Keto Bread's and the Protein Bread's back labels make clear that each slice, which is the labeled serving, contains "1g Allulose." Because allulose is a sugar and those Products contain more than 0.5 grams of allulose per serving, they cannot bear the Challenged Representation.

39. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

40. Plaintiff does not seek to enforce the FDCA directly. Rather, Plaintiff seeks relief under independently enforceable state consumer-protection laws, including New York state law provisions that impose food-labeling requirements identical to federal requirements.

**Reasonable Consumers Would Be Misled By Defendant's Deception.**

41. Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representation on the front of the package that the Products are "0g Sugar." Consumers are not expected to look beyond misleading representations on the

front of the package to discover that those representations are false.

42. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew or Should Have Known the Challenged Representation Was Misleading**

43. Defendant knew or should have known that the Products contained allulose and that consumers would understand the prominent "0g Sugar" statement as a representation concerning the Products' sugar content. Defendant formulated, manufactured, labeled, packaged, marketed, distributed, and sold the Products and had access to their formulations, ingredient specifications, packaging, and labeling before placing them into the stream of commerce.

44. Defendant controlled, or participated in, the decision to place the "0g Sugar" representation on the Products' principal display panels while identifying allulose in the ingredient statements. Defendant therefore knew or should have known that the Products' front-panel representation and ingredient disclosures would be evaluated by consumers as part of a single overall label.

45. Defendant could have discontinued the challenged representation, qualified it with an accurate and conspicuous disclosure, or reformulated the Products. Instead, Defendant continued to market and sell the Products with the unqualified "0g SUGAR" representation, thereby causing consumers to purchase Products they would not have purchased, or to pay more for them than they otherwise would have paid.

**Defendant's Challenged Representation Injured Plaintiff and the Class**

46. Defendant's labeling and marketing failed to adequately disclose material facts concerning the Products, including that: (a) the Products contain allulose; (b) allulose is a monosaccharide sweetening ingredient; (c) the Products' prominent "0g SUGAR" representation did not communicate the presence and significance of allulose; and (d) the Products' ingredient statements did not include the qualifying disclosure contemplated by 21 C.F.R. § 101.60(c)(1)(ii).

47. As a direct and proximate result of Defendant's materially misleading representation and omissions, Plaintiff and members of the proposed Class: (a) paid money for Products that were not as represented; (b) paid more for the Products than they otherwise would have paid; (c) were deprived of the benefit of their bargains; and (d) received Products worth less than the value represented by Defendant's unqualified "0g Sugar" claim.

48. Had Plaintiff and members of the proposed Class known that the Products contained allulose and that the prominent "0g Sugar" representation did not provide a complete and accurate description of the Products' sweetening ingredients, they would not have purchased the Products or would have paid substantially less for them.

49. Accordingly, Plaintiff and members of the proposed Class suffered actual injury because of Defendant's deceptive and misleading conduct, in violation of New York General Business Law §§ 349 and 350.

**CLASS ACTION ALLEGATIONS**

50. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following proposed classes (collectively, the "Classes"):

**New York Class**:

> All persons who, during the maximum period of time permitted by law, purchased in the State of New York one or more of the Products, in packaging bearing the "0g Sugar" representation for personal, family, or household use and not for resale.

**Nationwide Class**:

> All persons in the United States who, during the maximum period of time permitted by law, purchased one or more of the Products in packaging bearing the "0g Sugar" representation for personal, family, or household use and not for resale.

51. Excluded from the proposed Class are Defendant and its parents, subsidiaries, affiliates, officers, directors, employees, agents, legal representatives, successors, and assigns; any entity in which Defendant has a controlling interest; governmental entities and their agencies; the Court and its personnel; and all persons who timely and validly request exclusion from the Class.

52. Plaintiff reserves the right to amend the Class definition, propose additional subclasses, or modify the Class Period based on information obtained through discovery or further legal analysis.

53. The proposed Class is ascertainable because membership may be determined using objective criteria, including whether a person purchased one or more of the Products in New York for personal, family, or household use during the applicable limitations period. Class membership may be established through Defendant's and retailers' sales records, loyalty-program records, receipts, retailer records, affidavits, and other competent evidence.

54. The proposed Class is sufficiently numerous that joinder of all members is impracticable. Defendant marketed and sold the Products to consumers throughout New York through retail and online channels, including grocery stores, mass retailers, and other commercial outlets. The precise number and identities of Class Members may be determined

through discovery.

55. Common questions of law and fact exist and predominate over any questions affecting only individual Class Members. Common questions include, but are not limited to:

a. Whether allulose is a sugar;

b. Whether Defendant marketed the Products with the unqualified "0g sugar" representation;

c. whether the Products' ingredient statements identify allulose as an ingredient;

d. whether allulose is a monosaccharide sweetening ingredient and whether its presence is relevant to the meaning of the "0g sugar" representation under applicable federal labeling standards;

e. whether Defendant's labeling and marketing conveyed the misleading impression that the Products contained no sugar or sugar-containing sweetening ingredient;

f. whether Defendant's labeling and marketing were materially misleading under New York General Business Law §§ 349 and 350;

g. whether Defendant's conduct was consumer-oriented and occurred in the conduct of business, trade, or commerce in New York;

h. whether Defendant failed to adequately disclose material facts concerning the Products in the light of the "0g Sugar" representation;

i. whether Plaintiff and Class Members suffered economic injury because of Defendant's conduct;

j. the proper measure of damages, restitution, and other monetary relief;

and

k. whether Plaintiff and the Class are entitled to declaratory, injunctive, or other equitable relief.

56. These common questions predominate because Plaintiff's claims arise from Defendant's uniform course of conduct and substantially similar labeling and marketing of the Products. The central issues do not depend on individualized communications between Defendant and each consumer, but on the content of Defendant's packaging, ingredient statements, and marketing materials and the uniform impression those materials conveyed to reasonable consumers.

57. Plaintiff's claims are typical of the claims of the proposed Class. Plaintiff purchased one or more of the Products for personal, family, or household use, was exposed to the **"0g SUGAR"** representation, suffered the same type of economic injury as the proposed Class, and asserts claims based on the same conduct, representations, omissions, and legal theories applicable to the Class.

58. Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff has no conflicts of interest with other Class Members, understands the nature of this action, and is committed to prosecuting it vigorously. Plaintiff has retained counsel experienced in consumer-protection, false-advertising, food-labeling, and class-action litigation.

59. <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for Members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual Member of the Class, the resulting

multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

60. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

61. Defendant acted or refused to act on grounds generally applicable to the proposed Class by uniformly placing and disseminating the challenged **"0g SUGAR"** representation on or in connection with the Products. Accordingly, declaratory and injunctive relief under Rule 23(b)(2) is appropriate to require Defendant to correct or discontinue materially misleading labeling and marketing practices.

62. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

63. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

64. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief regarding the Class Members is appropriate under Federal Rule of Civil Procedure 23.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW ("GBL") § 349 (On behalf of Plaintiff and the New York Class)

65. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Plaintiff brings this cause of action on behalf of herself and the New York Class

members against Defendant.

67. New York General Business Law § 349 declares unlawful "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

68. Defendant is a "person" engaged in "business, trade or commerce" within the meaning of GBL § 349, and its marketing, labeling, and sale of the Products to New York consumers constitute business, trade, or commerce in New York.

69. Defendant's conduct was consumer-oriented. Defendant marketed and sold the Products to the public through uniform labeling and nationwide online listings directed to consumers, including New York consumers. Defendant profited by representing that the Products are "0g Sugar" even though they contain sugar, in the form of allulose.

70. Defendant engaged in deceptive acts and practices by falsely representing that the Products are "0g Sugar" even though they contain sugar in the form of allulose.

71. The Challenged Representation was material and was likely to mislead a reasonable consumer acting reasonably under the circumstances. A reasonable consumer would understand the Challenged Representation to mean that the Products contain no sugar when, in fact, they contain allulose.

72. Plaintiff and members of the New York Class were injured as a result of Defendant's deceptive acts and practices.

73. In reliance on the Challenged Representation, Plaintiff and members of the New York Class paid a premium for Products they otherwise would not have purchased, or would have purchased only at a lower price, and received Products worth less than what they paid. Had they known that the Products contained allulose and were not "0g Sugar", Plaintiff and

members of the New York Class would not have purchased the Products or would have paid significantly less for them.

74. Defendant made the Challenged Representations willfully and knowingly and with reckless disregard for the truth.

75. As a direct and proximate result of Defendant's violations of GBL § 349, Plaintiff and members of the NY Class are entitled to recover their actual damages or fifty dollars, whichever is greater, together with treble damages up to one thousand dollars for Defendant's willful and knowing violations, reasonable attorneys' fees, and injunctive relief enjoining Defendant from continuing the deceptive acts and practices alleged herein. N.Y. Gen. Bus. Law § 349(h).

**<u>COUNT II</u>**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**
**(On behalf of Plaintiff and the New York Class)**

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

77. Plaintiff brings this Count individually and on behalf of the proposed New York Class against Defendant.

78. New York General Business Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350.

79. GBL § 350-a(1) defines "false advertising" as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," and provides that, "[i]n determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in

the light of such representations." N.Y. Gen. Bus. Law § 350-a(1).

80. Defendant's labeling and advertising of the Products constitute "false advertising" within the meaning of GBL § 350-a(1).

81. Defendant engaged in false advertising by representing that the Products are "0g Sugar" even though they contain sugar in the form of allulose. Defendant's advertising was misleading in a material respect and failed to reveal facts material in light of the representations Defendant made.

82. The Challenged Representation was material and was ikely to mislead a reasonable consumer acting reasonably under the circumstances.

83. Plaintiff and members of the New York Class relied on Defendant's false advertising and were injured as a result. They paid a premium for Products they otherwise would not have purchased, or would have purchased only at a lower price, and received Products worth less than what they paid. Had they known the truth, Plaintiff and members of the New York Class would not have purchased the Products or would have paid significantly less for them.

84. Defendant made the Challenged Representation willfully and knowingly and with reckless disregard for the truth.

85. As a direct and proximate result of Defendant's violations of GBL § 350, Plaintiff and members of the New York Class are entitled to recover their actual damages or five hundred dollars, whichever is greater, together with treble damages up to ten thousand dollars for Defendant's willful and knowing violations, reasonable attorneys' fees, and injunctive relief enjoining Defendant from continuing to disseminate the false advertising alleged herein. N.Y. Gen. Bus. Law § 350-e(3).

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class, or alternatively the New York Class)**

86. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

87. Plaintiff brings this claim individually and on behalf of the Nationwide Class, or alternatively the New York Class, against Defendant under New York law or, in the alternative, under the substantially similar laws of the states applicable to members of the Nationwide Class.

88. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8.

89. Plaintiff and the Nationwide Class, or alternatively the New York Class, conferred a benefit on Defendant in the form of revenues Defendant derived from their purchases of the Products.

90. Defendant knew of the benefit Plaintiff and the Class Members conferred on it.

91. Defendant has been unjustly enriched by retaining revenues from Plaintiff's and Class Members' purchases. That retention is unjust because Defendant misrepresented that the Products were "0g Sugar" causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

92. Defendant accepted and retained the benefit of revenues derived from sales of the Products to Plaintiff and Class Members.

93. Defendant has thereby profited under circumstances that make it unjust for Defendant to retain the benefit.

94. Plaintiff and Class Members are therefore entitled to restitution in the form of revenues derived from Defendant's sale of the Products.

95. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members have suffered damages in an amount to be proven at trial.

96. Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's conduct.

97. Plaintiff and the Class Members lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

98. Legal remedies available to Plaintiff and the Class Members are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff has failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

99. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their respective purchases of the Products are determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in her favor and in favor of the Classes against Defendant, as follows:

a. For an order certifying the Classes under Fed. R. Civ. P. 23 and naming the Plaintiff as the representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b. For an order declaring that Defendant's conduct violates each of the statutes referenced herein:

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. Awarding all actual, compensatory, statutory, and punitive damages to which Plaintiff and Class members are entitled;

e. Awarding equitable relief, including restitution and/or disgorgement of Defendant's revenues obtained by means of any wrongful act or practice;

f. Enjoining Defendant from labeling, marketing, or selling the Products with the "0g Sugar" representation and requiring appropiate corrective disclosures;

g. Awarding reasonable attorneys' fees and costs, including expert witness fees and expenses as permitted by law;

h. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

i. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: November 13, 2026 Respectfully submitted,

**By:** ***/s/ Philip M. Hines***
Philip M. Hines, Esq.
**HELD & HINES, LLP**
622 Third Avenue, Suite 600
New York, New York 10017
T: (212) 696-4529
phines@heldhines.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis(Pro Hac Vice forthcoming)
954 Avenida Ponce De León
Suite 205, #10518
San Juan, PR 00907
T: (215) 559-6072
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiffs and the Class*